UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAMUEL ACOSTA,

    Plaintiff,

    v.

FEDERAL BUREAU OF
INVESTIGATION, *et al.*,

    Defendants.

Civil Action No. 12-1578 (JEB)

**MEMORANDUM OPINION**

This case concerns the efforts of *pro se* Plaintiff Samuel Acosta, a federal prisoner, to obtain documents about himself from assorted government agencies through the Freedom of Information Act. On April 17, 2013, this Court issued a Memorandum Opinion dismissing a number of Government Defendants for Plaintiff's failure to exhaust administrative remedies. See Acosta v. FBI (Acosta I), No. 12-1578, 2013 WL 1633068 (D.D.C. Apr. 17, 2013). The remaining Defendants – the Federal Bureau of Investigation and the Executive Office of United States Attorneys – now move for summary judgment, arguing that their search for responsive documents was adequate and that they properly withheld certain documents under appropriate FOIA exemptions. As the Court agrees, it will grant their Motion.

**I.    Background**

Beginning in 2010, Plaintiff sent various FOIA requests to government agencies under 5 U.S.C. § 552 *et seq.*, seeking all records concerning his criminal prosecution. See id. at *1. In Acosta I, and in a subsequent Minute Order of May 17, 2013, the Court dismissed all Defendants except EUOSA and the FBI. Those agencies have now released 805 pages in full to Plaintiff.

1

See Mot., Attach. 4 (Declaration of David Luczynski), ¶ 10 & Exh. G (FOIA Letter). Having done so, they have now renewed their Motion for Summary Judgment. The remaining dispute involves six EOUSA documents totaling 127 pages and 30 pages of FBI documents, all of which have been withheld either in part or in full. See Luczynski Decl., Exh. H (EOUSA Vaughn Index); Mot., Attach. 3 (Declaration of David Hardy), Exh. G (FBI Redacted or Withheld Pages). Because some of the explanations for Defendants' withholdings were quite generic, the Court ordered them to provide copies of EOUSA documents 3 and 5 and the FBI's pages labeled Acosta 21, 22, 24, 25, and 30 for *in camera* inspection. See Minute Orders of Sept. 10-11, 2013. The Government provided these documents on September 16th, and the Court has now reviewed all of them, along with the redacted copies provided to Plaintiff.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142, n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.    Analysis**

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order

the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(3); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

The Court will look first at the adequacy of Defendants' search for responsive documents, turn next to the exemptions they claim justify withholding certain documents, and finish by assessing the segregability of those documents.

    A. Adequacy of the Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To

4

meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (*per curiam*). The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. See Perry, 684 F.2d at 127. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

Attached to their Motion, Defendants have submitted the Declarations of David Luczynski, Attorney Advisor with EOUSA, and David Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, of the FBI, which explain in detail the steps that Defendants took to search for responsive records, including:

- Efforts undertaken to identify where relevant documents might be located, see Luczynski Decl., ¶ 11;

- Requests to the U.S. Attorney's office for the Southern District of Iowa to search for and send all responsive records to EOUSA, see id.;

- Search of the "LIONS" system by Plaintiff's name, see id.; and

- Certification that there were no records systems or locations not searched where responsive files might have been found.

See id.

Plaintiff contends that the above-detailed search was inadequate because Defendants have not laid out "what specific reports and documents were uncovered, … which databases were searched," or what other agencies may have responsive documents. Opp. at 10. Plaintiff's claim is belied by Defendants' declarations, which explain precisely what documents were uncovered,

5

which database was searched, which offices had responsive records, and why other offices were not searched. See Luczynski Decl., ¶ 11; Hardy Decl., ¶¶ 11-12. Absent contrary evidence – which Plaintiff does not provide – Defendants' declarations are sufficient to show that they complied with FOIA. See Perry, 684 F.2d at 127.

The Court, therefore, finds summary judgment proper on the adequacy of the search.

### B. Exemptions

As a preliminary note, although Defendants claimed the broader protection of Privacy Act Exemption j(2), this exemption was not, in fact, used to justify the withholding of any information challenged here. See Luczynski Decl., ¶ 14 (request processed "under both the FOIA and PA in order to provide the requester with the maximum disclosure authorized by law"); Hardy Decl., ¶ 16 (requests "processed under the access and disclosure provisions of the FOIA to achieve maximum disclosure"). Therefore, this Court does not reach the issue of the propriety of Defendants' invocation of Privacy Act Exemption (j)(2), and it may move to the specific claimed FOIA exemptions.

#### 1. *Exemption 3*

One hundred and seven pages of grand jury transcripts constitute the bulk of the withheld documents. See FOIA Letter; EOUSA Vaughn Index. As the basis for withholding these transcripts, Defendants cite, *inter alia*, FOIA Exemption 3, which covers records "specifically exempted from disclosure by statute" provided that such statute either "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The relevant statute here – Federal Rule of Criminal Procedure 6(e) – bars the disclosure of matters occurring before a grand jury. See Fed. R. Crim. P.

6

6(e)(2)(B). Because it was affirmatively enacted by Congress, Rule 6(e) is recognized as a "statute" for Exemption 3 purposes. See Fund for Constitutional Gov't. v. Nat'l Archives & Records Serv., 656 F.2d 856, 867 (D.C. Cir. 1981). The Rule's grand-jury-secrecy requirement is applied broadly and embraces any information that "tend[s] to reveal some secret aspect of the grand jury's investigation, [including] the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." Lopez v. Dep't. of Justice, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (internal quotation marks omitted). In the absence of a statutory exception to the general presumption of grand jury secrecy – not an issue here – Rule 6 is "quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule," and "the rule's ban on disclosure is for FOIA purposes absolute and falls within . . . Exemption 3." Fund for Constitutional Gov't., 656 F.2d at 868. As the documents here encompass transcripts of actual testimony before the grand jury, they clearly fall within the parameters of Exemption 3.

In light of this, Plaintiff's claim that "there exists a significant public interest" in releasing the grand jury transcripts, see Opp. at 22, is simply not a cognizable response to an otherwise valid FOIA withholding based on Exemption 3. To be sure, there are circumstances in FOIA cases in which "public interest" claims may be validly raised and considered. For example, assertions of Exemption 7(C) may implicate "the public interest in disclosure," Am. Civil Liberties Union v. U.S. Dept. of Justice, 655 F.3d 1, 12 (D.C. Cir. 2011), as the Court discusses in Section III.B.3, *infra*. While Defendants also seek to shield the grand jury transcripts based on Exemption 7(C), the Court need not consider such argument since Exemption 3 alone protects the transcripts from disclosure.

2. *Exemption 5*

Although Defendants withheld three documents under Exemption 5 – grand jury transcripts, a prosecution memorandum, and a copy of an attorney's handwritten notes – as the Court has already resolved the withholding of the grand jury transcripts under Exemption 3, it need only analyze the remaining two documents under Exemption 5. FOIA Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Withholdings are restricted to "those documents, and only those documents, normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 798-99 (1984). In contrast to disclosures in that context, and contrary to Plaintiff's contention, see Opp. at 16, the needs of a particular plaintiff are irrelevant to a court's determination of whether a particular communication is exempt from disclosure under (b)(5). See Martin v. Office of Special Counsel, Merit Sys. Prot. Bd., 819 F.2d 1181, 1184 (D.C. Cir. 1987) (citing Sears, Roebuck, 421 U.S. at 149).

Exemption 5 encompasses three distinct components – namely, the deliberative-process privilege (sometimes referred to as "executive privilege"), the attorney work-product privilege, and the attorney-client privilege. See Am. Immigration Council v. U.S. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012). As the Court finds Defendants' withholdings are appropriate under the attorney work-product privilege, it need not delve into the parties' arguments regarding the others.

The attorney work-product prong of Exemption 5 extends to "documents and tangible things that are prepared in anticipation of litigation or for trial" by an attorney. Fed. R. Civ. P. 26(b)(3)(A). As this Court has noted in the past, the work-product privilege is relatively broad,

encompassing documents prepared for litigation that is "foreseeable," if not necessarily imminent. See Am. Immigration Council, 905 F. Supp. 2d at 221. The privilege is not boundless, however:

> While it may be true that the prospect of future litigation touches virtually any object of a [law-enforcement agency] attorney's attention, if the agency were allowed "to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated."

Senate of the Com. of Puerto Rico ex rel. Judiciary Comm. v. U.S. Dep't of Justice, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 865 (D.C. Cir. 1980)). When reviewing a withholding under the work-product prong, the "'testing question' . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting Senate of the Com. of Puerto Rico, 823 F.2d at 586 n.42) (emphasis added). At a minimum, the government must demonstrate that the lawyer who prepared the document possessed the "subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." In re Sealed Case, 146 F.3d at 884.

The Court has now reviewed the two outstanding documents *in camera* and is satisfied that they comport with the exemption's requirements. EOUSA Document 3 is a prosecution memorandum clearly prepared in anticipation of Plaintiff's prosecution. It lays out the prosecution's theory of the case along with the evidence it planned to adduce at trial. It is thus exempt from production. EOUSA Document 5 is a copy of the handwritten notes of an attorney. While it does not contain the myriad pieces of exemptible information that Defendants assert, see

9

Vaughn Index, Justification for Doc. 5, it nevertheless constitutes the mental impressions of an attorney, prepared in anticipation of Plaintiff's case, and is thus clearly exempt from production.

   3. *Exemptions 6 and 7(C)*

Plaintiff next challenges EOUSA's and the FBI's withholding of certain documents or portions of documents under FOIA Exemptions 6 and 7(C). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes "records of information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although both exemptions require agencies and reviewing courts to undertake the same weighing of interests, the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects." Reporters Comm., 489 U.S. at 756. First, Exemption 6 encompasses "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the adverb "clearly." See id. Second, Exemption 6 prevents disclosures that "would constitute" an invasion of privacy, while Exemption 7(C) targets disclosures that "could reasonably be expected to constitute" such an invasion. See id. Both differences are the result of specific amendments, reflecting Congress's conscious choice to provide greater protection to law-

enforcement materials than to personnel, medical, and other similar files. See id. Courts have accordingly held that Exemption 7(C) "establishes a lower bar for withholding material" than Exemption 6. ACLU v. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck, 997 F.2d at 1491.

As a result, if the records and information Defendants seek to withhold in this case were "compiled for law enforcement purposes," the Court need only address whether the agency has properly withheld these documents under Exemption 7(C), and there is no need to consider the higher bar of Exemption 6. Here, Plaintiff never argues that the records were not compiled for law-enforcement purposes. Nor would he have much luck doing so given that the records all relate to either the FBI's criminal investigation of him or EOUSA's criminal investigation and prosecution of him. See Hardy Decl., ¶ 20; FBI Redacted or Withheld Pages; Luczynski Decl., ¶ 22. This threshold question answered, the Court must now consider the privacy interests at stake in disclosure and the public interest in release.

The first step in the Exemption 7(C) analysis is to determine whether there is, in fact, a privacy interest in the materials sought. See ACLU, 655 F.3d at 6. In this context, the Supreme Court has rejected a "cramped notion of personal privacy" and emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." Reporters Comm., 489 U.S. at 763. To constitute a privacy interest under FOIA, the claimed interest must be "substantial." Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008); see also Roth v. Dep't of Justice, 642 F.3d 1161, 1174 (D.C. Cir. 2011). "[S]ubstantial," however, "means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." Multi Ag Media, 515 F.3d at 1229-30.

Defendants identify several categories of people whose names or other identifying information appear in the remaining documents. See Mot. at 9-12; Luczynski Decl., ¶ 23; Hardy Decl., ¶¶ 18, 24-33 & p. 7 (accompanying chart) ("FBI Special Agents and support personnel," "third parties who provided information," "local law enforcement personnel," "third parties merely mentioned," "non-FBI federal government personnel," and "third parties who provided information to the FBI"). Hardy's Declaration and the Vaughn Index accompanying Luczynski's Declaration explain the privacy interests that these people possess. See EOUSA Vaughn Index; Hardy Decl., ¶¶ 24-33. The Court, moreover, has compared the redacted EOUSA and FBI documents given to Plaintiff with the unredacted copies provided for *in camera* inspection. The vast majority of redactions on pages withheld are careful and pinpointed redactions of names, words, clauses, and sentences, including, for example, pages that contain only IP addresses and other identifying computer information.

The Court finds each of these privacy interests substantial, a decision consistent with D.C. Circuit law. As it relates to the private citizens, for example, "third parties who may be mentioned in investigatory files, as well as . . . witnesses and informants who provided information during the course of an investigation," have a privacy interest in the contents of law-enforcement records. Nation Magazine, Wash. Bureau v. Customs Serv., 71 F.3d 885, 894 (D.C. Cir. 1995); see also Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998) ("It goes almost without saying, moreover, that individuals other than [the target of the investigation] whose names appear in the file retain a strong privacy interest in not being associated with an investigation involving professional misconduct . . . ."). Indeed, this interest is so strong that our Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to

confirm or refute compelling evidence that the agency is engaged in illegal activity.'" Schrecker v. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting SafeCard, 926 F.2d at 1206).

In response, Plaintiff argues that a significant public interest exists in the potential exoneration of "a wrongfully convicted man." See Opp. at 18. This interest, however, is not a public one. The public interest, as Circuit precedent makes clear, "does not include helping an individual obtain information for his personal use" to attack his conviction. Oguaju v. United States, 288 F.3d 448, 450 (D.C. Cir. 2002), vacated and remanded on other grounds, 541 U.S. 970, (2004), reinstated, 378 F.3d 1115 (D.C. Cir. 2004). While Plaintiff makes several references to government misconduct as a justification for disclosure, see Opp. at 22-23, the "requester must establish more than a bare suspicion in order to obtain disclosure." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004). Plaintiff "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Id. Plaintiff has produced no such evidence here.

While the Court has found substantial privacy interests in this matter, it would have reached the same outcome even with only a modest privacy interest. "[W]here we find that the request implicates no public interest at all, '[w]e need not linger over the balance; something ... outweighs nothing every time.'" Beck v. Dep't of Justice, 997 F.2d 1489, 1494 (D.C. Cir. 1993) (quoting National Ass'n of Retired Fed'l Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989)); see also Davis, 968 F.2d at 1282 ("[E]ven if a particular privacy interest is minor, nondisclosure remains justified where … the public interest in disclosure is virtually nonexistent.").

Defendants, therefore, appropriately withheld EOUSA documents 1, 2, and 4 along with the FBI's pages labeled Acosta 1 through 29, under Exemption 7(C).

4. *Exemption 7(E)*

Exemption 7(E) authorizes the Government to withhold records and documents if, *inter alia*, they were "compiled for law enforcement purposes," provided that their publication "would disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). The FBI invokes this Exemption for one record: Acosta 30. See FBI Redacted or Withheld Pages. In order for the Government to invoke the "techniques and procedures" prong of 7(E), it must demonstrate that its withholdings meet three basic requirements. First, the Government must show that the documents were in fact "compiled for law enforcement purposes" and not for some other reason. 5 U.S.C. § 552(b)(7)(E). Given that the record at issue relates to the FBI's criminal investigation of Plaintiff, see Hardy Decl., ¶ 20; FBI Redacted or Withheld Pages, the Government clears this bar. Second, the Government must show that the records contain law-enforcement techniques and procedures that are "generally unknown to the public." Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 36 (D.D.C. 2012). Finally, the Government must show that disclosure "could reasonably be expected to risk circumvention of the law." Id.

The FBI provided this document to the court for *in camera* review. The document contains information relating to the FBI's access of internet message boards. Disclosure of this document, which contains undercover law-enforcement techniques and procedures not generally known to the public, could risk circumvention of the law. This document, therefore, was properly withheld.

C. Segregability

Plaintiff next objects – in rather cursory fashion – that Defendants' segregability analysis is conclusory. See Opp. at 20-21. While the Government is "entitled to a presumption that [it]

14

complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013), this presumption of compliance does not obviate its obligation to carry its evidentiary burden and fully explain its decisions on segregability. See Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977). The agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted); see also Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (determining Government affidavits explained nonsegregability of documents with "reasonable specificity"). "Reasonable specificity" can be established through a "combination of the Vaughn index and [agency] affidavits." Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002).

The only redactions to the two EOUSA documents released in part are four instances of FBI agents' names. See EOUSA Vaughn Index. While four other EOUSA documents have been withheld in their entirety, there is no material that could have been released on these pages. More specifically, the Court's *in camera* review of the prosecution memorandum and the handwritten notes of an attorney satisfy it that these documents do not have segregability problems. Similarly, a handwritten letter from an inmate to the Government is properly withheld in full because the inmate's handwriting may identify him. Finally, Exemption 3 protects all 107 pages of withheld Grand Jury transcripts from release.

As for the FBI documents, the Hardy Declaration maintains:

- "Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. No reasonably segregable, nonexempt portions were withheld from plaintiff. To further describe the information withheld could identify the very material which the FBI seeks to protect," Hardy Decl., ¶ 17;

- "The FBI has attempted to release all segregable portions of the information provided by these individuals without revealing their identifies." id., ¶ 26; and

- "After extensive review of the documents at issue, the FBI has determined that there is no further reasonably segregable information to be released."

Id., ¶ 37.

Although some of this language may appear generic, having reviewed the redacted documents and the Hardy Declaration, the Court finds that no segregability problem exists here. The documents have careful and pinpointed redactions of names, words, clauses, and sentences. While a number of other documents have been withheld in their entirety, having reviewed them *in camera*, the Court is satisfied that there is no material that could have been released on these pages.

The Court's review of the redacted documents and its *in camera* inspection, coupled with the Hardy Declaration and the EOUSA's Vaughn Index, establish that no segregability problem exists here. The Court, therefore, grants Defendants' Motion on this issue.

## IV.  Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting judgment in Defendants' favor.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  September 23, 2013